to compensate it for excess costs incurred by reason of plaintiff's breach of contract, was within its rights under the contract. Accordingly, plaintiff is not entitled to recover, and plaintiff's petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, LITTLETON, Judges, concur.

## F. L. BEHLING CO. v. UNITED STATES.
### No. 49463.

United States Court of Claims.
Jan. 13, 1953.

———◆———

Philip B. Vogel, Fargo, N. D., for plaintiff.

Wilson Myers, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This suit involves an alleged shortage in the potatoes that were shipped to defendant under a contract of sale.

On September 26, 1947, plaintiff contracted to deliver to the defendant 640,000 pounds of seed potatoes at a unit price of $3.75 per hundred pounds.

The contract stipulated that the plaintiff should be responsible for the articles shipped until they should be delivered at the designated point.

The potatoes in question were shipped in October 1947 by railway freight on commercial bills of lading. The defendant claims that potatoes of the contract value of $423.75 were short or missing from four cars when delivered and similar products of the contract value of $588.75 were short or missing from another car.

The defendant in making payment deducted these two sums totaling $1,012.50 from the contract price. The plaintiff sues for this balance.

The plaintiff made purchases from various growers or dealers, the potatoes being trucked or shipped to plaintiff's warehouse, where they were sorted, graded, and sacked. It also made some purchases of potatoes that had already been sacked and tagged by Government inspectors.

In loading for shipment under the contract the sacks of potatoes were placed on a conveyor belt, which deposited them in the doorway of the freight cars. From that point the actual loading was done by hand. The bags were loaded in tiers at one end of the car and when that end was finished the other end was loaded in a similar manner. The plaintiff used only one man in the actual hand loading of a car.

In the process of loading no one made an actual count of the number of bags placed in the cars. After the loading the approximate number of sacks may be determined from the tiers or layers. It would, however, be impossible to count the number of sacks after the car is loaded. When no count is made the number of sacks in the several cars may vary at least to some degree.

After the cars were loaded an inspector from the Department of Agriculture inspected the potatoes and certified them as to quality. He did not count the sacks, but on each tag noted "loader's count."

The inspector sealed each car. No count was made by the railroad, the company accepting "shipper's weight and loader's count."

On arrival in San Francisco, the Army loaded the potatoes on transports, at which time a count of the sacks was made.

According to the Army records, comprised of tally sheets made upon unloading the cars, the cars varied, five of them being short from 2 to 198 sacks and four of them varying from 1 to 36 sacks over the normal number of sacks per car. There was an average net shortage of 52 sacks per car.

A part of the refund was set off against a tax refund due plaintiff for the year 1948. It has been agreed that the tax claim is merged in this action.

Plaintiff filed a claim for the shortages, but this claim was denied.

What became of the potatoes? Were they actually loaded? Were they lost? The record does not furnish any complete and final answer.

In view of the record we are unable to reach any other reasonable conclusion than that there was a net shortage of the potatoes actually delivered.

We have no doubt plaintiff intended to ship the full quota of potatoes according to its contract. It was a responsible and experienced shipper.

However, there was no actual count of the sacks or bags at the time of loading. The method of loading would necessarily lend itself to some variation. The evidence shows that there was uniformly at least some slight variation in the number of sacks that were used in loading a car.

We are face to face with an actual count as against an estimate.

The contract states that the contractor was responsible for the articles or materials until delivered at the designated point. From the record as a whole we find that the potatoes in dispute were not actually delivered to the defendant.

The petition is dismissed.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.